DocuSign Envelope ID: 7D25253C-8CD0-46D9-A26B-089C7C0A49D7

*Execution Version*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FR-AM Two LLC,<br>432 FF&E Mezz LLC,<br>432 FF&E LLC,<br>FR-AM One LLC,<br><br>              Debtors. | Chapter 11<br><br>Case No. 23-73775-reg<br>Case No. 23-73776-reg<br>Case No. 23-73777-reg<br>Case No. 23-73778-reg<br><br>Jointly Administered |
| FR-AM Two LLC and 432 FF&E Mezz LLC,<br><br>Plaintiffs,<br><br>-against-<br><br>56th and Park (NY) Owner LLC,<br><br>Defendant. | Adversary No. 24-08001-reg |

**Settlement Agreement**

This settlement agreement (this "Agreement"), dated as of April __, 2024 (the "Agreement Effective Date"), is entered into by and among (i) 56th and Park (NY) Owner, LLC ("Lender"), (ii) FR-AM Two LLC, FR-AM One LLC, 432 FF&E Mezz LLC, and 432 FF&E LLC as debtors and debtors in possession (each a "Debtor," and, collectively, the "Debtors"), (iii) Harry Macklowe ("Macklowe"), and (iv) Patricia Sabine Lazar ("Lazar"). The Debtors, the Lender, Macklowe and Lazar are each referred to herein as a "Party" and collectively as the "Parties."

**Recitals**

WHEREAS, Macklowe is the 100% member of Debtor FR-AM Two LLC, which in turn holds 100% of the membership interests in Debtor FR-AM One LLC, which in turn owns certain real property and improvements located at 78B and 28H ("Units 78B and 28H"), 432 Park Avenue, New York, New York, and Macklowe is the manager of Debtors FR-AM Two LLC and FR-AM One LLC.

DocuSign Envelope ID: 7D25253C-8CD0-46D9-A26B-089C7C0A49D7

*Execution Version*

WHEREAS, Lazar is nominally the 100% member of Debtor 432 FF&E Mezz LLC, which in turn holds 100% of the membership interests in Debtor 432 FF&E LLC, which in turn owns certain real property and improvements located at 78A ("Unit 78A," and, together with Units 78B and 28H, the "Units"), 432 Park Avenue, New York, New York, and Macklowe is the trustee of the membership interest, and serves as manager, of Debtors 432 FF&E Mezz LLC and 432 FF&E LLC.

WHEREAS, the Lender and Debtors entered into certain agreements executed on or about May 6, 2022, pursuant to which Lender made a loan to each Debtor, as follows: (i) that certain mortgage loan in the original principal amount of $345,000.00 made by Lender to FR-AM One LLC, as evidenced by, among other things, that certain Mortgage Note (the "78B Mortgage Note"), made by FR-AM One LLC in favor of Lender; (ii) that certain mezzanine loan in the original principal amount of $31,622,858.29 made by Lender to FR-AM Two LLC, as evidenced by, among other things, that certain Mezz Promissory Note (the "78B Mezz Note"), made by FR-AM Two LLC in favor of Lender; (iii) that certain mortgage loan in the original principal amount of $155,000.00 made by Lender to 432 FF&E LLC, as evidenced by, among other things, that certain Mortgage Note (the "78A Mortgage Note," and together with the 78B Mortgage Note, the "Mortgage Notes"), made by 432 FF&E LLC in favor of Lender; and (iv) that certain mezzanine loan in the original principal amount of $14,293,940.31 made by Lender to 432 FF&E Mezz LLC, as evidenced by, among other things, that certain Mezz Promissory Note (the "78A Mezz Note," and together with the 78B Mezz Note, the "Mezzanine Notes"; the Mezzanine Notes and Mortgage Notes, collectively, the "Notes"), made by 432 FF&E Mezz LLC in favor of Lender.

WHEREAS, the Mezzanine Notes are secured by those certain pledge and security agreements dated as of May 9, 2022 (the "Pledge Agreements"), made by FR-AM Two LLC and 432 FF&E Mezz LLC (the "Mezz Debtors") in favor of Lender, and, among other things, pledging to Lender 100% of the membership interests in FR-AM One LLC and 432 FF&E LLC (the "Membership Interests"), respectively.

WHEREAS, the Mortgage Notes are secured by those certain mortgages and assignments of leases and rents and security agreements and financing statements dated as of May 9, 2022 (the "Mortgages," and together with the Notes, Pledge Agreements and all accompanying documents executed thereto, the "Loan Documents"), made by FR-AM One LLC and 432 FF&E LLC (the "Mortgage Debtors") to Lender, and, among other things, granting to Lender the "Mortgaged Premises," which is defined to include the Units.

WHEREAS, no certificates representing the equity interests in the Mortgage Debtors were ever created or issued.

WHEREAS, on May 12, 2022, Lender asserts that it perfected its security interest in the Membership Interests pursuant to Uniform Commercial Code ("UCC") Article 9 by filing UCC-1 Filing Statements with the Delaware Department of State as U.C.C. Filing Nos. 2022 4018164 and 2022 4018123 (collectively, the "UCC-1 Filing Statements").

DocuSign Envelope ID: 7D25253C-8CD0-46D9-A26B-089C7C0A49D7

*Execution Version*

WHEREAS, pursuant to Section 1 of the Notes, Debtors agreed, *inter alia*, to pay to Lender all amounts due and owing under the Loan Documents on or before March 31, 2023 (the "Original Maturity Date"), the stated maturity date of each of the Notes.

WHEREAS, on the Original Maturity Date, the unpaid principal amount of each of the Notes, together with all interest accrued and unpaid thereon and all other amounts due by the Debtors thereunder (collectively, the "Outstanding Obligations") were due and payable and remain so.

WHEREAS, the Notes provide that the principal sum on each of the Notes shall accrue interest "at a rate of eight percent (8%) per annum" (the "Non-Default Interest Rate") and that the Debtors shall "pay interest on any amount of principal (and to the extent permitted by applicable law, on any amount of interest) which is not paid when due... at a rate per annum... equal at all times to the lesser of twenty percent (20%) per annum... or the highest rate permitted by law" (the "Default Interest Rate").

WHEREAS, the Notes further entitled Lender to collect late charges by providing that "if any installment of principal and/or interest or any other sums required to be paid hereunder is not paid within fifteen (15) days after the same is due, the Borrower shall pay to the Lender upon demand five cents ($.05) for each dollar so overdue."

WHEREAS, Debtors allegedly defaulted under the Notes, including by failing to pay the Outstanding Obligations by the Original Maturity Date.

WHEREAS, the Units are encumbered by a recorded mechanic's lien (the "Mechanic's Lien").

WHEREAS, on October 11, 2023 (the "Petition Date"), Debtors each filed a voluntary petition for relief (collectively, the "Chapter 11 Cases") pursuant to chapter 11, of title 11, of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York, Central Islip Division (the "Bankruptcy Court"), the Chapter 11 Cases being jointly administered under Case No. 23-73775-reg.

WHEREAS, as of the Petition Date, the alleged outstanding obligations under the Notes totaled $53,027,305.12, broken down under each Note as follows: (i) 78A Mezz Note: not less than $16,331,742.09; (ii) 78A Mortgage Note: not less than $175,072.55; (iii) 78B Mezz Note: not less than $36,131,440.34; and (iv) 78B Mortgage Note: not less than $389,050.14.

WHEREAS on December 21, 2023, Lender filed proofs of claim in each of the Chapter 11 Cases, *see* Case Nos. 23-73775-reg, 23-73776-reg, 23-73777-reg, and 23-73778-reg at Claim No. 2 (the "Lender POCs"), which Lender POCs assert, *inter alia*, the principal amounts due and the addition of accruing interest, late fees, and all other amounts due under the Notes during the period after the Petition Date.

DocuSign Envelope ID: 7D25253C-8CD0-46D9-A26B-089C7C0A49D7

*Execution Version*

WHEREAS, the Units are encumbered by recorded and disputed liens of common charges (the "Common Charges Liens"), and, on December 29, 2023, the Board of Managers of the 432 Park Avenue Condominium (the "Condo Board") filed proofs of claim against Debtor FR-AM One LLC, *see* Case No. 23-73777-reg at Claim No. 3, and Debtor 432 FF&E LLC, *see* Case No. 23-73778-reg at Claim 3 (the "Condo Board POCs").

WHEREAS, other than the Lender POCs and Condo Board POCs, the only other timely filed proofs of claim were those filed by Audio Command Systems, Inc. in each of the Chapter 11 Cases, *see* Case Nos. 23-73775-reg, 23-73776-reg, 23-73777-reg, and 23-73778-reg at Claim No. 1 (the "Audio Command Systems POCs," together with the Condo Board POCs and all other allowed claims, excluding the Lender POC, the "Non-Lender Claims").

WHEREAS, on November 6, 2023, Lender filed its *Motion to (I) Dismiss the Chapter 11 Cases Pursuant to 11 U.S.C. § 1112(b); Or, Alternatively, (II) For Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* (the "Motion to Dismiss the Cases"), *see* Case No. 23-73775-reg. at Docket No. 17, and on January 17, 2024, the Debtors filed their *Joint Opposition to the Motion of 56th and Park (NY) Owner LLC Seeking Dismissal of the Chapter 11 Cases, or in the Alternative, Relief From the Automatic Stay* (the "Opposition to the Motion to Dismiss the Cases"), *see id.* at Docket No. 38, and Lender filed its *Reply* (the "Reply in Support of the Motion to Dismiss the Cases," and, together with the Motion and Opposition to Dismiss the Cases, the "Case Contested Matter"), *see id.* at Docket No. 40.

WHEREAS, on January 2, 2024, the Mezz Debtors filed a *Complaint* (the "Complaint"), asserting claims against Lender for lien avoidance and equitable subordination, initiating Adversary Proceeding Case No. 24-08001-reg (the "Adversary Proceeding"), *see* Adv. Pro. Case No. 24-08001-reg. at Docket No. 1, on January 24, 2024, Lender filed its *Motion to Dismiss the Complaint Filed by Plaintiffs FR-AM Two LLC and 432 FF&E Mezz LLC Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure* and *Memorandum of Law* in support thereof (the "Motion to Dismiss the Complaint"), *see id.* at Adv. Pro. Docket Nos. 4 and 5, on February 24, 2024, the Mezz Debtors filed the *Plaintiffs' Joint Memorandum of Law in Opposition to the Motion of 56th and Park (NY) Owner LLC Seeking Dismissal of the Complaint* (the "Opposition to the Motion to Dismiss the Complaint"), *see id.* at Adv. Pro. Docket No. 9, and on February 26, 2024, the Lender filed its *Reply* (the "Reply in Support of the Motion to Dismiss the Complaint," and, together with the Motion to Dismiss the Complaint and the Opposition to the Motion to Dismiss the Complaint, the "AP Contested Matter"), *see id.* at Adv. Pro. Docket No. 10 (the Case Contested Matter and the AP Contested Matter collectively, the "Contested Matters").

WHEREAS, on January 9, 2024, the Debtors filed a *Joint Chapter 11 Plan of Reorganization* (the "Initial Plan"). *See* Case No. 23-73775-reg. at Docket No. 37.

WHEREAS, this Agreement sets forth the terms upon which the Lender and the Debtors fully resolve the Contested Matters and further outline the terms under which the Lender will

DocuSign Envelope ID: 7D25253C-8CD0-46D9-A26B-089C7C0A49D7

*Execution Version*

support a restructuring or liquidation of the Debtors including the Lender Claims Treatment (as defined below) in or pursuant to a chapter 11 plan in the Chapter 11 Cases that is consistent in all material respects with this Agreement, all as noted more fully below.

NOW, THEREFORE, in consideration of the promises and mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto hereby agree as follows:

1. Dismissal of the Complaint. The Complaint shall be dismissed with prejudice immediately upon entry of an order approving this Agreement by the Bankruptcy Court (the "Approval Date").

2. Withdrawal of the Motion to Dismiss the Cases. Immediately upon the Approval Date, the Motion to Dismiss the Cases shall be deemed withdrawn.

3. Issuance and Delivery of the Certificates. Within ten (10) business days of the Approval Date, the Mortgage Debtors shall issue certificated securities to the Lender reflecting the 100% of the Membership Interests in the Mortgage Debtors (the "Certificates") and shall physically provide all such Certificates to Lender in a mutually acceptable form.

4. Lender POCs. Immediately upon the Approval Date, the Lender POCs shall be deemed fully and finally allowed in all respects, not subject to any other or further objection, in the aggregate amount of $53,027,305.12; plus (i) post-petition interest from the Petition Date through March 31, 2024 in the amount of $1,843,200.31; plus (ii) postpetition interest from April 1, 2024 at the applicable rate; plus (iii) Lender's reasonable fees and expenses (including reasonable attorneys' fees relating only to proceedings before the Bankruptcy Court)[1] (the "Allowed Lender Claims").

5. Reinstatement of the Loan Documents. Immediately upon the Approval Date, the Loan Documents shall be reinstated as amended to provide that (i) the maturity date with respect to the Notes shall be extended to October 31, 2024 (the "Revised Maturity Date"), and (ii) as of the Petition Date, the Notes shall accrue postpetition interest at the Non-Default Interest Rate, and, so long as there is no uncured default under the Loan Documents or this Agreement, shall continue to accrue postpetition interest at the Non-Default Interest Rate.

6. The Amended Plan. The Initial Plan shall be withdrawn without prejudice within three (3) business days of the Approval Date subject to the Debtors' exclusive right to promptly thereafter, but no later than April 27, 2024, file and seek confirmation of an amended chapter 11 plan (the "Amended Plan") in accordance with the following terms:

   a) The Amended Plan shall incorporate the terms of this Agreement.

   b) The Amended Plan milestones (each a "Milestone," and together,

---

[1] In the event that the Parties are unable to agree on the amount of Lender's attorneys' fees and expenses included as part of the Allowed Lender Claims the dispute over such attorneys' fees and expenses will be submitted to the Bankruptcy Court for resolution.

DocuSign Envelope ID: 7D25253C-8CD0-46D9-A26B-089C7C0A49D7

*Execution Version*

"Milestones") are:

 i. The Amended Plan shall be confirmed by entry of an order of the Bankruptcy Court as soon as reasonably practicable after the Approval Date, but in no event later than June 28, 2024 (subject to the Bankruptcy Court's availability).

 ii. The Non-Lender Claims shall be paid, as described in the Non-Lender Claims Treatment (defined herein), within twenty-one (21) days after entry of the order confirming the Amended Plan, unless these claims are disputed and under objection in which event said claims will be paid only after entry of a final order allowing said claims.

 iii. The Unit Disposition (defined herein) resulting in full payment of the Allowed Lender Claims shall occur no later than October 31, 2024 (i.e., the Revised Maturity Date).

c) Material Terms of the Amended Plan are:

 i. Within twenty-one (21) days after entry of the order confirming the Amended Plan, Macklowe shall pay all allowed Non-Lender Claims in full in cash (the "Non-Lender Claims Treatment").

 ii. The Amended Plan shall provide that the Debtors will seek to either (i) refinance the Notes (a "Refinance"), or (ii) pursue a sale of the Units (a "Sale," and, together, the "Unit Disposition"), which in either event satisfies the Allowed Lender Claims in full in cash.

 iii. The Sale process (whether incorporated in the Amended Plan or initiated by separate motion), shall recognize the rights of the Lender (or its designee) to credit bid up to the full amount of the Allowed Lender Claims at such sale under 11 U.S.C. § 363(k), except if the Debtors obtain an independent third party private sale contract which enables the Debtors to pay the Allowed Lender Claims in full at closing or in conjunction with other funds on or before the Revised Maturity Date.

 iv. The Amended Plan shall provide the following treatment of the Allowed Lender Claims (the "Lender Claims Treatment"):

  a. Reinstatement of the Loan Documents.

  b. On or before the Revised Maturity Date, the Allowed Lender Claims, as defined in this Agreement, including, without limitation, all applicable interest, fees and

DocuSign Envelope ID: 7D25253C-8CD0-46D9-A26B-089C7C0A49D7

*Execution Version*

> expenses that continue to accrue post-confirmation, shall also be paid in full in cash.

> v.    The Debtors failure to satisfy any Milestone shall constitute a Default (as defined in section 11 of this Agreement), thereby entitling Lender to all remedies provided for in this Agreement, including the automatic assignment and transfer of the Membership Interests to Lender; *provided, however*, that Debtors shall have ten (10) days to cure any Default other than a failure to pay the Allowed Lender Claims in full in cash no later than the Revised Maturity Date (a "Maturity Default").

> vi.    The Debtors shall not amend, modify or alter any term or provision of the Amended Plan without the prior written consent of the Lender.

7.    Bankruptcy Fees and Expenses. Macklowe shall be personally liable for all fees and expenses of the Debtors' bankruptcy filings and proceedings and none shall be borne by the Debtors or their estates, except if the Allowed Lender Claims are otherwise paid in full in cash.

8.    No Additional Debt. Debtors shall not accrue any other or further debt of any kind until after the Allowed Lender Claims are paid in full in cash, and, even then, may only accrue such other and further debt to implement the Plan consistent with this Agreement.

9.    Ongoing Restrictions. Any and all restrictions included in the Loan Documents shall remain in effect, including, without limitation, all restrictions with regards to the subject collateral, i.e. the Membership Interests and the Units, and, additionally, (i) Macklowe shall remain as manager of the Debtors, pending the earlier of repayment of the Allowed Lender Claims or a default under this Agreement, as the case may be, (ii) the Debtors shall not lease any of the Units to any person without the Lender's consent or otherwise impair Lender's ability to occupy or possess the Units in the event of a default under this Agreement, and (iii) the Units will be maintained in the reasonably same conditions as existed on the date that Lender's appraisers visited the Units in the course of these Chapter 11 Cases, including by ensuring all fixtures remain in place.

10. Additional Agreements of the Debtors. Debtors agree, beginning promptly upon the Approval Date and continuing until the repayment of the Allowed Lender Claims in full, to do all things in furtherance of this Agreement, including:

> a)    Take all such action as may be reasonably necessary or reasonably requested by the Lender to carry out the purposes and intent of this Agreement, including using commercially reasonable efforts to obtain all governmental, regulatory, licensing, or other approvals (including any necessary or appropriate third-party consents) necessary to consummate the Amended Plan if any;

> b)    Not redeem or make or declare any dividends, distributions, or other

DocuSign Envelope ID: 7D25253C-8CD0-46D9-A26B-089C7C0A49D7

payments, or otherwise make any transfers or payments to Macklowe or Lazar other than as permitted under this Agreement or the Amended Plan;

c) Actively oppose and object to the extent permitted by law and in good faith the efforts of any person seeking to object to, impede, or take any other action to directly or indirectly interfere with the acceptance, implementation, or consummation of the Amended Plan (including, if applicable, the filing of timely filed objections or written responses) including opposing and objecting to any motion, application, pleading, or proceeding filed by another party with the Bankruptcy Court or any other court challenging (or seeking standing to challenge) the amount, validity, enforceability, extent, perfection, or priority of, or seeking avoidance or subordination of, the Allowed Lender Claims as compromised hereunder. Notwithstanding the foregoing, the Debtors are not responsible and cannot guarantee the outcome of its efforts under this subparagraph 10(c).

11. Default.

a) Any of the Parties' failure to satisfy or otherwise comply with any term or provision under this Agreement shall constitute an event of default under this Agreement (a "Default"). For the avoidance of doubt, such Default shall include any failure of the Debtors to pay the Allowed Lender Claims consistent with the terms of this Agreement on or before the Revised Maturity Date.

b) Debtors shall have ten (10) days to cure any Default, other than a Maturity Default, from the date of such Default.

c) Upon the occurrence of any uncured Default, including a Maturity Default, the Parties agree that the following shall occur:

   i. Any and all rights arising from or relating to the Membership Interests shall be automatically assigned and otherwise transferred to the Lender in the most tax advantageous way possible effective as of the earlier of the date of such default or November 1, 2024, with the Lender to bear all transfer and tax obligations to the extent not otherwise exempt under 11 U.S.C. § 1146(a).

   ii. Macklowe and Lazar shall automatically be deemed to have resigned as manager of all the Debtors. Lender shall immediately be permitted to file a notice on the docket in each of the Chapter 11 Cases reflecting the automatic assignment or transfer of the Membership Interests, as described herein, to the Lender.

   iii. Macklowe and Lazar shall, within twenty-one (21) days, vacate the Units, subject to reasonable extension for good cause shown,

DocuSign Envelope ID: 7D25253C-8CD0-46D9-A26B-089C7C0A49D7

*Execution Version*

or otherwise take no action to frustrate, the Lender's efforts to exercise full control and ownership of the Membership Interests and possession of the Units.

d) During the pendency of any uncured Default under this Agreement, the Allowed Lender Claims shall accrue interest at the Default Interest Rate.

12. <u>Lender Approval</u>. Debtors shall share with Lender all drafts of the Amended Plan, motion to approve this Agreement and all other pleadings that the Debtors intend to file at least three (3) days prior to filing for Lender's review and approval, obtained by prior written consent, but the failure to do so shall not constitute a Default under this Agreement so long as the Parties are proceeding in good faith.

13. <u>Bankruptcy Court Approval</u>. Debtors shall seek approval of this Agreement, including pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), from the Bankruptcy Court upon appropriate motion and notice as provided for under the Bankruptcy Code and the Bankruptcy Rules such that a hearing for such approval will occur on or around April 10, 2024 or such other date the Bankruptcy Court may direct. The failure to conduct such a hearing on or before April 22, 2024 shall constitute a Default under this Agreement.

14. <u>Authority to Execute the Agreement</u>. Each Party represents and warrants to the other Parties that such Party has all requisite authority to enter into and execute this Agreement and carry out the transactions contemplated hereby and perform its obligations contemplated hereunder, and the execution and delivery of this Agreement and the performance of such Party's obligations hereunder have been duly authorized by all necessary corporate, limited liability company, partnership or other similar action on its part.

15. <u>Binding Effect</u>. This Agreement shall be binding in all respects upon the Debtors and Lender, and each of their respective successors and assigns and shall inure to the benefit of the Debtors and Lender and each of their respective successor and assigns.

16. <u>Mutual Reservation of Rights, Claims and Defenses</u>. This stipulation is independent of the pending arbitration proceedings (the "<u>Arbitration</u>") to which Macklowe, certain entities owned by Macklowe, and an affiliate of Lender are parties. Nothing in this Agreement shall release any claims in the Arbitration or otherwise affect the Arbitration in any way.

*[Signature Page(s) Follow]*

DocuSign Envelope ID: 7D25253C-8CD0-46D9-A26B-089C7C0A49D7

*Execution Version*

Dated: April __, 2024

**FR-AM ONE LLC**
**FR-AM TWO LLC**

By: _____
Name: Harry Macklowe
Title: Manager


**432 FF&E LLC**
**432 FF&E MEZZ LLC**

By: _____
Name:
Title: Manager


**PATRICIA SABINE LAZAR**

By: _____


**HARRY MACKLOWE**

By: _____


**56TH AND PARK (NY), LLC**

By: _____
Name: Jordan Dembo
Title: Vice President & Secretary

*PRIVILEGED AND CONFIDENTIAL*
*A&B 4.9.24 Draft*

Dated: April 11, 2024

**FR-AM ONE LLC**
**FR-AM TWO LLC**

By: _____

Name: Harry Macklowe
Title: Manager


**432 FF&E LLC**
**432 FF&E MEZZ LLC**

By: _____

Name:
Title: Manager


**PATRICIA SABINE LAZAR**

By: _____     as trustee for his wife


**HARRY MACKLOWE**

By: _____


**56TH AND PARK (NY), LLC**


By: _____
Name: _____
Title: _____

11

*PRIVILEGED AND CONFIDENTIAL*
*A&B 4.9.24 Draft*

Dated: April 11, 2024

**FR-AM ONE LLC**
**FR-AM TWO LLC**

By: _____
Name: Harry Macklowe
Title: Manager

**432 FF&E LLC**
**432 FF&E MEZZ LLC**

By: _____
Name:
Title: Manager

**PATRICIA SABINE LAZAR**

By: _____ as trustee for his wife

_____ Acklowledged
**HARRY MACKLOWE**

By: _____

**56TH AND PARK (NY), LLC**

By: _____
Name: _____
Title: _____